JOSEPH F. ROTHE FOUNDRY COMPANY, Appellant, vs.
HARDING, Respondent.

*December 7, 1922—March 6, 1923.*

*Sales: Express agreement as to acceptance: Notice of breach of
warranty: Duty to make test: Damages: Expense in making
goods conform to warranty.*

1. Where this court cannot say that a finding of the trial court is
   against the clear preponderance or great weight of the evi-
   dence, it must be treated as a verity.
2. Where the parties to a sales contract agreed that certain cast-
   ings, which were for use on a government contract of the
   buyer, would pass the final government inspection, this was
   an express agreement as to what should be deemed an accept-
   ance of the goods by the buyer, rendering inapplicable the
   Uniform Sales Act (sec. 1684t—49, Stats.) as to the effect
   of an acceptance of the goods "in the absence of express or
   implied agreement of the parties."
3. The buyer did not waive his claim for damages by failing to
   make shop tests of the articles, where he did not agree to
   make such tests, although his contract with the government
   required them.
4. The castings having been bought, as the seller knew, for use
   on a government contract, and the buyer being under a pen-
   alty of $50 a day for delay in the completion of his contract,
   the buyer's damages, on delivery to him of defective castings,
   were not limited to the general measure of damages, namely,
   the difference between the contract price and the value of
   the defective goods as delivered, but he could recover the cost
   of welding the castings to make them conform to the govern-
   ment requirements, this method being the most expeditious,
   and therefore, in view of the penalty for delay clause in the
   government contract, the least expensive method.

APPEAL from a judgment of the circuit court for Winne-
bago county: WILBUR E. HURLBUT, Circuit Judge. *Af-
firmed.*

Contract. The plaintiff is engaged in the foundry busi-
ness at the city of Green Bay. The defendant is a con-
tractor and owner of a machine shop located at Oshkosh,
Wisconsin. The complaint alleges that the plaintiff, at the

request of the defendant, manufactured for and furnished to defendant certain castings and material according to certain specifications given by the defendant and upon orders therefor from the defendant, for which castings and material, together with certain items of freight and express, there became due to the plaintiff from defendant $5,421.70, there having been paid on account thereof $3,524.18, leaving due $1,897.52 with interest.

The answer admits that the defendant entered into a contract with the plaintiff whereby plaintiff agreed to furnish to the defendant castings according to the specifications and patterns furnished to the defendant by the United States government for his guidance in carrying out a contract for the manufacture of certain machinery, which machinery was to be installed in the government locks at Sault Ste. Marie, Michigan, and which machinery was to be manufactured by the defendant under his contract with the government according to certain specifications and patterns.

The answer further alleges that the plaintiff failed to manufacture the castings pursuant to the patterns and specifications, and by reason of such failure of the plaintiff the defendant was obliged to repair and remedy the defects with great expense to himself. The answer then sets up by way of counterclaim an action for damages sustained by the defendant by reason of the failure of the plaintiff to manufacture the castings ordered from it in accordance with the contract between them. There was a reply, and upon the issues so made there was a trial by the court, and findings of fact and conclusions of law were filed.

The court found the following facts:

"That prior to the placing of any orders by the defendant with the plaintiff for castings, plaintiff came to the city of Oshkosh and inspected the patterns, blue prints, and government specifications as contained in defendant's contract with the United States government. That plaintiff was fully advised of defendant's contract with the United States

government and of the terms and conditions thereof in so far as it related to the castings and equipment proposed to be made by plaintiff. . . ."

"That after having full knowledge and understanding of defendant's contract with the United States government and the nature and use of castings proposed to be made by the plaintiff, and after having agreed upon a price per pound for said castings, plaintiff and defendant entered into a contract whereby plaintiff agreed to furnish to the defendant certain castings according to the terms and conditions of defendant's contract with the United States government and in accordance with the specifications of the American Society of Testing' Materials, specifically specified on each order placed by the defendant with the plaintiff."

"That under the agreement of the said parties plaintiff contracted, agreed, and warranted to defendant that it would manufacture and deliver to defendant castings which were to be true to pattern, free from cracks, flaws, and excessive shrinking, and in other respects to conform to whatever points the parties might specially agree upon, and be fit and suitable for the purposes for which they were intended, and particularly to pass the final inspection of the United States government, and in all things to comply with the plans, specifications, and patterns of the United States government."

"That if plaintiff had fully and properly completed its contract it would be entitled to recover the sum of $1,897.52."

"That all of the castings were inspected for surface or obvious defects and tested for chemical defects by the defendant from time to time as they were delivered to him by the plaintiff and while they were being machined and prepared for use by him. That they were further inspected by government inspectors at defendant's shop in the city of Oshkosh for obvious defects. . . ."

The findings then specify the respects in which the castings were deficient, and it is further found:

"That the defects in said castings were covered up and concealed by the use or application of a foreign substance known as iron cement, and were not discoverable until the

same was removed.   That said defects were not patent or obvious."

"That the defects in the cylinders and worm cases consisted in their being more or less porous, containing sand-holes and blow-holes, and one of the gear cases had a considerable crack in it and a part of the said gear case was loosely filled with a foreign substance.   That some of the castings were thin and not true to pattern."

"That the defendant in all cases, upon the discovery of defects in the castings, duly and within a reasonable time under the circumstances of each particular case notified plaintiff of the defects and gave him a chance to correct and remedy same."

"That the defendant is entitled to recover from the plaintiff the following items of damage under his counterclaim:

| | |
|---|---:|
| Freight charges | $41 50 |
| Overweight charges | 80 23 |
| Expense on account of dome castings | 258 78 |
| Bill for welding cylinders and worm castings | 888 16 |
| Labor in connection with welding castings | 651 33 |
| Expense in supervising work | 350 00 |
| Total | $2,270 00" |

The amount of $1,897.52 was offset against the sum of $2,270, and defendant had judgment on his counterclaim for the sum of $472.48, with costs and disbursements, from which judgment plaintiff appeals.

For the appellant there were briefs by *Williams & Williams* of Oshkosh, and oral argument by *Charles H. Williams*.

For the respondent there was a brief by *Barber & Keefe* of Oshkosh, and oral argument by *Frank B. Keefe*.

The following opinion was filed January 9, 1923:

ROSENBERRY, J.   It is claimed on behalf of the plaintiff that the items of expense allowed defendant by the findings of the court are not warranted by the evidence.   An examination of the record convinces us that if the defendant is entitled to recover on his counterclaim, the amount of

the recovery is fully justified by the evidence in relation thereto.

Under several subheads plaintiff raises the question of whether or not the defendant complied with his duty in respect to the ascertainment of defects of quality and giving plaintiff notice thereof within a reasonable time after delivery of the goods. A short statement of some of the clauses of the contract between the defendant and the United States will make more clear plaintiff's contention. The contract provided:

"The cylinders are twelve-inch bore with forty-eight-inch stroke of piston, and the fluid under pressure is brought to the engines through pipes leading from accumulators and pumps located on the lock wall. Cylinders must be bored straight and true, with axis of bore parallel to the base, and the final cut shall be very light and made with a broad tool. Before shipment each cylinder shall be tested under fluid pressure in the shop; they will then be carefully inspected by the inspector for leakage, and for sand or blow holes. Small sand or blow holes may be made tight by carefully plugging with metal plugs. Cylinder castings having an excessive amount of blow holes, cavities or sponginess shall be recast."

Clause 59 of the contract provides: ". . . Cast iron shall conform to the specifications for gray iron castings, A48-05, pp. 362 *et seq.*" This has reference to the American Society for Testing Materials, and there is a general provision that steel and iron shall conform to the specifications of that society.

The general clause in the contract covering the matter of tests is as follows:

"In general, all materials and equipment will be subject to factory tests, so far as this is practicable, and the contractor shall furnish all facilities for and bear the expense of such tests, except for the salary of the representative of the contracting officer, who shall supervise them. After the completion of the work each separate unit and the entire in-

stallation shall be subject to a running test of such duration as to be satisfactory to the contracting officer and show that the requirements of the specifications and the contractor's guaranty have been complied with. This final test cannot be made until after water is admitted to the lock chamber."

The court found that the plaintiff agreed and warranted that the castings would pass the final inspection of the United States government. It is claimed by the plaintiff that this finding is not supported by the evidence. The contract was an oral one and the evidence as to the terms of the contract is in conflict, the defendant contending that it was expressly agreed between the parties that the castings furnished should comply with the terms of the contract and the specifications therefor, the plaintiff claiming that it was to deliver merchantable castings. If the contract between the plaintiff and the defendant was as claimed by defendant and found by the court, the castings could not comply with the terms of the contract between the defendant and the government unless they were castings which would pass the final test. We cannot say that the finding of the court is against the clear preponderance or great weight of the evidence. Therefore the finding of the court upon that subject must be treated as a verity.

It is contended by the plaintiff that under the law the defendant, by accepting the goods and failing to give notice of the breach of any promise or warranty within a reasonable time, waived his right to claim damages by reason of any defect in the quality of the goods. This leads to a consideration of part of the Uniform Sales Act, sec. 1684t—49, Stats.:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the

breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

It is to be noted that the provisions of sec. 1684*t*—49 govern only in the absence of express or implied agreement of the parties. The court here found that, by the terms of the contract between the plaintiff and the defendant, the plaintiff warranted that the goods would pass the final government inspection. This was an express agreement as to what should be deemed an acceptance of the goods by the buyer, and we are not called upon to consider in this case whether or not, where there is an express warranty, the buyer by acceptance of the goods waives only those defects which are observable by ordinary application of the senses to external appearances. *Northern S. Co. v. Wangard,* 117 Wis. 624, 94 N. W. 785.

The court found that the castings were inspected for surface or obvious defects and were tested for chemical defects while they were being machined and prepared for use by the defendant. This finding is abundantly sustained by the evidence. The defect complained of here is that the castings were porous and would not withstand hydraulic pressure as they were required to do by the terms of the contract between the defendant and the government. It seems to be undisputed that a defect of this sort is discoverable only by an actual test. By its contract the plaintiff agreed that that test should be made by the government and that the castings furnished would pass the test. By the terms of the contract nothing was left to inference, and the defendant cannot be held to have accepted the castings until that test had been made. It is undisputed that, almost immediately upon the making of the test and discovery of the defective condition of the castings, the defendant notified the plaintiff thereof. Under such circumstances there is no waiver of the right of a buyer to claim damages by reason of a defect in

the quality of the goods delivered by accepting and retaining them until the test is made.

It is argued quite strenuously that the plaintiff might rely upon that provision of the contract between the defendant and the government which required the castings to be shop-tested, that if the shop test had been made in accordance with the terms of the contract the defects in the castings would have been disclosed at a time when there would have been an opportunity for recasting them and thus a very large expense involved in the welding of the castings would have been avoided. The difficulty with this contention is that it imports into the contract between the plaintiff and defendant an obligation not found therein. The only mention of testing in the negotiations between the parties was that testified to by the defendant to the effect that the parties considered that clause of the contract which provided that the cylinders would have to pass a test of 600 pounds per square inch and the gear castings 200 pounds per square inch hydraulic pressure and the warranty of the plaintiff to the defendant that the castings furnished by him would pass such test. The defendant did not agree that the tests would be made. He did not agree that if the government did not require the tests that he would make them upon his own account. In fact, there is no agreement between the parties in relation to the matter other than that which has been stated. To hold the defendant waived the right to claim damages by reason of a defect in the quality of the materials delivered because he failed to test them himself is to visit upon him the penalty which would have followed a breach of a contract on his part to the effect that the tests would be made. The evidence shows that one cylinder was tested in the shop and found to be in accordance with the specifications. No other pressure test was made in the shop of any of the materials furnished. Under the facts of this case the defendant was not required either by

the terms of his contract or by the law to make a test. To hold the defendant liable under such circumstances would be in effect to hold him responsible for the failure of the government to make or require to have made the tests provided for by its contract with the defendant. Manifestly, no one could make a government test except the government, and that was the test which the castings were required to pass.

It is contended by the plaintiff that the damages recoverable by the defendant upon his counterclaim should be limited to the amount necessary to replace the castings with other castings. Under ordinary circumstances no doubt this would be true, the general rule of damages being that where a buyer accepts goods which are defective in quality his damages are the difference between the contract price and the value of the defective goods as delivered. Here the defective goods delivered were worthless except such value as they might have as scrap. As a matter of fact, in this case a number of castings were found defective and were replaced and the plaintiff had the benefit of the contract between the defendant and the government to that extent.

The court found that the parties contracted specially with reference to the fact that these castings were to be delivered to the government. Under defendant's contract with the government the title to the castings when delivered to the government would pass to the government and thereafter disposition of the matter was entirely in the hands of the government under the contract. This fact was as well known to the plaintiff as to the defendant. When the castings were installed and found defective it seems to be established without dispute that the plan followed by the defendant was that which would result in the least expense and loss to him. The testimony is that it would have taken from three to four months to have the castings remade, machined, delivered, and put in place at the locks. In the meantime, as

Joseph F. Rothe Foundry Co. v. Harding, 180 Wis. 14.

plaintiff well knew, the defendant would be under a penalty of $50 per day for delay in the completion of his contract. Welding was the most expeditious method of remedying the defects disclosed by the test and the least expensive.

In this case the special circumstances were fully communicated to the plaintiff. It was fully aware of the terms of the contract of the defendant with the government and the fact that in case of default a penalty would be imposed, of the fact that title to the castings when delivered to the government would pass to the government, and that the disposition of all matters relating to the doing of those things necessary to satisfy the requirements of the contract between the defendant and the government were in the hands of the government. No part of the penalty, the amount of which was over $1,200, was assessed by the court against the plaintiff. The amount recovered by the defendant upon his counterclaim is the expense that the defendant was put to in order to make the castings delivered by the plaintiff conform to the warranty. Such damages were clearly within the contemplation of the parties and therefore recoverable by the defendant upon his counterclaim. *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Foss v. Heineman,* 144 Wis. 146, 128 N. W. 881; *Hubbard S. F. Co. v. Federal B. & S. Co.* 169 Wis. 277, 171 N. W. 949.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 6, 1923.