GREER, Respondent, vs. OELHAFEN and another, Appellants.

*February 8—March 6, 1923.*

*Sales: What is cash payment: Seller paying freight: Purchaser paying upon arrival of shipment: Instalment contracts: Severable breach.*

1. Where a contract for the sale of lumber provided for shipment f. o. b. destination on bills of lading with draft attached, the seller, by paying the freight, retained title until delivery under sub. 5, sec. 1684t—19, Stats., and payment of drafts on the arrival of the lumber was a cash payment in compliance with the contract, payment on arrival of the draft not being necessary.

2. Where the purchaser had paid for each car of lumber as delivered according to contract, but had held back a small amount on the third car because of its inferior quality, and during subsequent correspondence offered payment if the seller would resume shipments, his breach, if any, was not so material as to entitle the seller to refuse to make further deliveries under sub. 2, sec. 1684t—45, Stats., providing that in certain instances instalment contracts are severable, and though the breach may give rise to compensation it does not give the right to treat the contract as broken.

APPEAL from a judgment of the circuit court for Lincoln county: A. H. REID, Circuit Judge.  *Affirmed.*

Action to recover damages for the breach of a contract entered into November 8, 1919, for the sale of ten carloads of lumber at $65 per M. f. o. b. at Evansville, Indiana.  The lumber was to be shipped immediately from Tomahawk, Wisconsin, the business place of defendants.  The first car was shipped December 23, 1919; the second car December 26, 1919; and the third car March 3, 1920.  After that no lumber was shipped.  It was a part of the contract that lumber might be shipped with drafts attached to bill of lading; and plaintiff paid the drafts for the first two cars either before or upon arrival of the cars at Evansville.  No draft was attached to the bill of lading for the third car, and it was agreed between the parties by wire that plaintiff should mail defendants his check for $850 on account and the car should be released.  Upon unloading the car it was discovered that it contained a large quantity of an inferior grade of lumber.  Plaintiff had not sent his check for $850, and, upon discovering the inferior lumber, negotiations began by letters resulting in a payment of $600 on account and the payment of $145.05 freight, leaving a balance of $239.25 unpaid.  These negotiations occupied about a month, and during all that time, as well as before the shipment of the third car, plaintiff had been insisting upon early shipments, and he claims he held the balance due on the third car because he could get no promise from the defendants that they would ship the balance of the lumber.  The market was steadily advancing, and as early as February, 1920, and as late as April, 1920, defendants sold like lumber to others.  The defendants claimed they had the right to breach the contract because plaintiff had not made payments as agreed, but the court found that he had substantially performed, and entered judgment for plaintiff for his damages less the amount owed on the third car.  Defendants appealed.

For the appellants there was a brief by *G. M. Sheldon* of Tomahawk, attorney, and *Francis E. McGovern* of Milwaukee, of counsel, and separate reply briefs by *G. M. Sheldon*, attorney, and by *McGovern, Hannan, Devos & Reiss* of Milwaukee, of counsel; and the cause was argued orally by *Mr. McGovern*.

*R. T. Reinholdt* of Tomahawk, for the respondent.

VINJE, C. J. The appeal presents but two questions for solution: (a) Did the trial court err in finding "that shipment of said lumber to the plaintiff with draft attached to bill of lading merely required that plaintiff should make payment of the draft so as to secure bill of lading by the time that delivery of the car was tendered him at Evansville, Indiana?" and (b) Was plaintiff's refusal to pay the balance of $239.25 due on the third car till he could get an assurance from defendants that they would ship him more lumber such a substantial breach of the contract as to bar recovery?

The contract was for the sale of lumber f. o. b. cars at Evansville, Indiana, and the seller was to pay the freight. Title, therefore, remained in the seller till the lumber was delivered at Evansville. Sub. 5, sec. 1684*t*—19, Stats. A cash payment for the purchase of personal property is payment upon delivery. Such payment was made for the first two cars and it satisfied the calls of the contract, as the trial court found.

No draft was attached to the bill of lading of the third car, and while plaintiff did not send his check for $850 as agreed upon, because of the inferior lumber the car contained, he did send his check for $600 and he paid $145.05 freight, in all $745.05, almost within $100 of what was agreed to upon the assumption that the lumber was up to grade. It was not up to grade and that was defendants' fault. The negotiations followed by letters for about a month. Plaintiff constantly urged defendants to ship and

said he would send balance if they would promise him more lumber. This they refused or neglected to do. At this time he had sustained damages in a far greater sum than he withheld, and we think the trial court was justified in holding that plaintiff's breach, if any, was not so material as to entitle defendants to breach the contract. Sub. 2, sec. 1684t—45, Stats., provides:

"Where there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

The facts in this case bring it well within the statute calling for a severable breach. See, also, *Wilbur v. Means,* 171 Wis. 401, 406, 177 N. W. 575; *Helgar Corp. v. Warner's Features,* 222 N. Y. 449, 119 N. E. 113. The breach of plaintiff was quite justifiable and trivial compared with defendants' breach in refusing to ship promptly as they had agreed to do. Plaintiff sustained damages in excess of $3,000 by their failure to live up to the terms of their contract, and they cannot justly complain of plaintiff withholding a couple of hundred dollars till he found out what they were going to do.

*By the Court.*—Judgment affirmed.