GERBER and others, Respondents, vs. OGLE COAL COMPANY, Appellant.

*February 9—May 8, 1928.*

*Sales: Default in payment of instalment delivery: Materiality: Question of fact: Garnishment: Plaintiff summoning itself as garnishee: Validity of judgment in sister state.*

1. In an action for a balance alleged to be due on account of coal delivered, the evidence as to the materiality of the buyer's breach of a sales contract which required payments for instalments of coal shipped during the month of August to be made September 10, 1922, in failing to pay $2,465.30 for coal shipped on a one-hundred-car order, presented a question of fact, and findings of a referee, approved by the trial court, are affirmed. p. 586.
2. The defendant in a pending action in this state could not commence an action against the plaintiffs in Indiana and summon itself into court as garnishee under Burns' Ann. Stats. Ind. 1914, § 966, so as to make the judgment in the garnishment action conclusive of the issues in the instant action. p. 587.

3. Where defendant, although it knew that the F. Company was the owner of an interest in the cause of action, summoned itself as garnishee in a court in Indiana, but in its disclosure, as garnishee, of the amount due made no mention of the fact that the F. Company owned such interest, the process of the Indiana court was ineffectual to reach the fund sought, and the judgment rendered therein did not affect the action then pending in this state.  p. 588.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge.  *Affirmed.*

Action on contract begun December 27, 1922.  Judgment was entered on the 11th day of April, 1927.  The plaintiffs commenced suit against the defendant in the circuit court for Sheboygan county, securing jurisdiction by the garnishment of the C. Reiss Coal Company, claiming that the defendant owed them the sum of $8,862.42, being the balance alleged to be due on account of coal delivered up to and including September 20, 1922; also in a second cause of action for damages in the sum of $400 for failure of the defendant to deliver two large carloads of Pocahontas coal sold to the plaintiffs under another contract.

The defendant answered, denying the indebtedness and counterclaiming for damages alleged by it to be due to the failure of the plaintiffs to deliver the balance of fifty-two cars due under the contract of July 3, 1922, alleging that the market price was $8.50 at the time of the breach on September 15, 1922, or a loss of $5 a ton on 2,400 tons, in all the sum of $12,000.

The matter was referred to a referee, who found the plaintiffs were justified in terminating the contract because of the defendant's failure to pay; that plaintiffs had delivered fifty-four instead of fifty-five cars as alleged in the complaint, or fifty-two cars as alleged in the counterclaim; that the plaintiffs were entitled to recover on the first cause of action $8,687.42, together with interest, and the sum of $292.50 on the second cause of action.

While the action was pending in Sheboygan county, Wis-

consin, the *Ogle Coal Company,* the defendant herein, commenced an action in May, 1926, in Marion county, Indiana, against *Edward F. Gerber,* United Coal Mines, Inc., Coal Land Development Company, *Edward F. Gerber* and S. Funston, Jr., alias W. S. Funston, Jr., individually and as partners, doing business under the firm name and style of F. & R. Coal Company. The *Ogle Coal Company* secured jurisdiction by garnishing itself and by proof of publication and by giving itself notice. The complaint demanded damages in the sum of $12,000 and interest, answered in the garnishment proceeding admitting an indebtedness in the sum of $8,020.44, and on July 3, 1926, judgment was entered in the garnishment proceeding begun in Marion county, Indiana. The *Ogle Coal Company* answered as follows:

"That said *Ogle Coal Company* is indebted to *Edward F. Gerber,* United Coal Mines, Inc., Coal Land Development Corporation, *Edward F. Gerber* and S. Funston, Jr., first name unknown, also known as William S. Funston, Jr., individually and as partners, doing business under the firm name and style of F. & R. Coal Company, defendants herein, in the amount of $8,020.44."

In the answer no mention was made of the pendency of the proceeding in Wisconsin nor were any facts alleged showing that the account was in any way disputed by the defendants in that action, the plaintiffs here. Upon the rendition of this judgment the *Ogle Coal Company* moved in the circuit court for Sheboygan county to vacate and set aside the judgment of the referee on the ground that the judgment was *res adjudicata.* The motion was denied and, upon the coming in of the referee's report, the report was confirmed, judgment was entered in favor of the plaintiffs and against the defendant for $8,979.92 with interest amounting to $2,445.15, costs taxed at $239.94, in all the sum of $11,665.01. From the judgment so entered the defendant appeals.

Gerber v. Ogle Coal Co. 195 Wis. 578.

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Eric Wm. Passmore,* of counsel, all of Milwaukee, and oral argument by *Mr. Passmore.*

For the respondents there was a brief by *Bowler & Bowler,* and oral argument by *G. W. Buchen,* all of Sheboygan.

The following opinion was filed March 6, 1928:

ROSENBERRY, J. Both parties in the main accept the report of the referee as confirmed by the court. The defendant raises three principal questions in this court. It is not necessary to state all of the complicated facts connected with the entire transaction which were necessarily gone into before the referee in order to present the questions raised here. We shall therefore only state such of the facts as seem to us to be necessary to a consideration and determination of the questions raised. We shall hereafter in this opinion use the term "plaintiffs" as referring to the United Coal Mines, Inc., Coal Land Development Corporation, *Edward F. Gerber* and William S. Funston, Jr., and *Finance Realty Corporation* unless otherwise indicated, and we shall not distinguish between these parties whether they were parties to the original contract or assignees, and we shall treat the transaction as if it had been conducted by a single party.

The plaintiffs accepted orders from the defendant for coal as follows:

May 12, 1922, 30 cars at $2.95 per ton f.o.b. mines.
June 16, 1922, 50 cars at $3.00 " " " " .
June 20, 1922, 25 cars at $3.00 " " " "
July 3, 1922, 100 cars at $3.50 " " " "

The controversy herein relates principally to the contract dated July 3, 1922. The referee found that fifty-four cars were delivered and forty-six remained undelivered. The terms of this contract were: "Net cash on or before the 10th of the month for all shipments made during the preceding

month." Deliveries were to be made during a period covered by a very serious strike in the coal industry and a strike on the railway lines serving the territory. There were a number of conferences, and letters and telegrams were exchanged having to do with the matter of more prompt delivery. On July 26, 1922, at a conference held in Cincinnati, there was an adjustment, and the plaintiffs promised to forward coal at the rate of ten cars a day for the next four days and to instruct the Borderland Coal Sales Company, from whom they were purchasing, to ship the defendant's cars direct from the mine on the defendant's orders. Two cars were shipped on July 26th, three on July 27th. The shipments then ceased. It appears that the defendant was advised by the plaintiffs that certain shipments had been made which had not in fact been made, due to the fact that parties from whom plaintiffs secured the coal did not fulfil their contract. On August 17, 1922, there was another conference, and it is claimed that there were misstatements made as to the number of cars shipped and in course of shipment. On August 23, 1922, four cars were shipped, three on August 24th, six on August 30th, and eight on September 8th. On September 12, 1922, the plaintiffs wrote the defendant inclosing invoices covering seven cars, stating that these invoices amounted to $2,466.20 and were payable on September 10th, concluding with "You will receive this letter on Wednesday, September 13th. We would like to have you wire us that you will send us a check on that date so we will have it in our office not later than September 14th."

On September 13, 1922, plaintiffs wired the defendant as follows: "Wire if you will or will not send check for past-due account approximately twenty-five hundred dollars."

The defendant wrote the plaintiffs on September 13, 1922, as follows:

"Your favor under date of September 12th requesting a remittance in the amount of $2,466.20 and particularly call-

ing for a wire on our part, has been received. We have also noted your wire of today which reads as follows:

"'Wire if you will or will not send check for past-due account approximately twenty-five hundred dollars.'

"In accordance with a letter written by us to the United Coal Mines, Inc., of even date, you will find that there is a slight difficulty to be straightened out between ourselves before we can pass all the invoices. Your favor under date of September 13th also sets forth car PRR 702067, whereas up to the present writing we have no invoice of this car.

"From your past dealings with us you are keenly aware of the fact that we always pay promptly and that we do not seek in any way to evade our obligations. The matters indicated to you above must be straightened out between ourselves immediately.

"But there is a much more serious phase to the situation. We have been informed that you sold more coal under contracts than the mine from which we are receiving shipments is able to produce in the light of the present car supply, and that your contract with the producing company has only a short time to run. In view of our past dealings, we want to assure you that we shall pay you without question every dollar that is coming to you and pay you promptly, but we must have the certainty that we are going to get every ton of coal due us under our present arrangement. We want to be enlightened by you, and at once, on this score, and just as soon as information has been furnished us by you satisfactory to us, you will be paid every penny due you.

"You can readily appreciate our position in this matter. Because of your not living up to the terms of our original contract and failing to deliver, we sustained a very serious loss in adjusting claims made against us by the people to whom we had sold. We cannot afford to take further chances and we must protect ourselves as we go along."

Replying to the defendant's letter of September 13th, the plaintiffs on September 14, 1922, wrote the defendant as follows:

"We inclose you copy of letter received from your Mr. Cratty of Cincinnati.

"The shipments that our company made in August amounting to $2,466.20, past due, and we desire to serve

notice on you now that this is our last notification.   Unless you send us a New York draft for the amount, also for shipments which have been made since September 1st and not invoiced.   Our bill for $2,466.20 does not include PRR 702067.

"In reference to your company paying your accounts promptly, permit us to call your attention to the fact that you were slow in paying your June account and we notified you that we would stop shipments if settlement was not immediately forthcoming, and we finally got our pay about a week or ten days past due date.

"We inclose you copies of invoices making this $2,466.20.

"P.S.   We have just today received weight on car PRR 702067, and we are inclosing invoice to cover."

On September 15, 1922, the plaintiffs notified the defendant by telephone that by reason of defendant's failure and refusal to pay they would terminate, and did terminate, the contract, and no further shipments were made except that four cars then in course of shipment were not stopped but proceeded to destination.

The first question presented is whether or not the plaintiffs were justified in terminating the contract by reason of the defendant's failure to pay as stated in the letter of September 13, 1922.   The contract was concededly a Pennsylvania contract and is governed by the Uniform Sales Act (sub. (2) of sec. 121.45, Wis. Stats.: § 19693, Pa. Stats. 1920) :

"Where there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for

compensation, but not to a right to treat the whole contract as broken."

As the court of appeals of the state of New York said:

"The failure to make punctual payment may be material or trivial according to the circumstances. We must know the cause of the default, the length of the delay, the needs of the vendor, and the expectations of the vendee. If the default is the result of accident or misfortune, if there is a reasonable assurance that it will be promptly repaired, and if immediate payment is not necessary to enable the vendor to proceed with performance, there may be one conclusion. If the breach is wilful, if there is no just ground to look for prompt reparation, if the delay has been substantial, or if the needs of the vendor are urgent so that continued performance is imperiled, in these and in other circumstances there may be another conclusion. Sometimes the conclusion will follow from all the circumstances as an inference of law to be drawn by the judge; sometimes as an inference of fact to be drawn by the jury." *Helgar Corp. v. Warner's Features* (1918), 222 N. Y. 449, 119 N. E. 113.

The referee's findings upon this point are as follows:

"The defendant contends that plaintiffs' assignor breached its contract by failing to ship promptly; that if it has shipped promptly, delivery of the 100 cars would have been made before payment was due. I find that shipment was not made promptly but that the delay was due to strikes; that because thereof the plaintiffs' assignor was released from liability for failure to ship promptly; that plaintiffs' assignor was entitled to payment on September 10th for all cars shipped to the defendant during the preceding month on the 100-car order. I further find that the defendant waived the breach of contract on the part of the plaintiffs' assignor for prompt shipment.

"I find that on September 10, 1922, there was due and payable to the plaintiffs' assignor a substantial sum, $2,465.30, on the 100-car order; that on September 12th and again thereafter plaintiffs' assignor demanded payment for the sum due, and notified the defendant that unless payment was promptly made the contract would be rescinded;

that the defendant failed to pay and plaintiffs' assignor did thereafter rescind the contract by refusing to make further shipments on said order; that the defendant breached its contract by failing to pay the said amount due September 10th, and that the plaintiffs' assignor was justified in not making further shipments; that the several cars shipped thereafter to defendant on the 100-car order was done by plaintiffs' agents, contrary to instructions."

It appears from the testimony that the plaintiffs were pressed financially, actions had been begun against them and funds due them garnished; that the coal market was very unsteady; that the prices were fluctuating within wide ranges, and that although a settlement of the strike had been made, the situation was still disturbed and unsettled.

In this case we incline to the view that upon the record there was presented a question of fact. Upon the whole evidence different minds might come to different conclusions as to the materiality of defendant's breach. The referee had the entire situation in all its details before him and his findings have been approved by the court. The evidence is such that a finding either way could not be said to be against the great weight and clear preponderance of the evidence. Therefore we are not disposed to disturb the referee's findings.

The conclusion that we have reached upon the first branch of the case makes it unnecessary to consider the market price of the coal for failure to deliver which the defendant claims damages by way of counterclaim. If the plaintiff was justified in terminating the contract, the defendant was not entitled to further deliveries.

The third proposition made relates to the effect of the judgment obtained in the suit begun in Marion county, Indiana. It is urged that this judgment is conclusive of the issues in this action and that under the full-faith-and-credit clause of the federal constitution the courts of Wisconsin are bound to give it full effect. Although the question was touched upon in *Nevian v. Poschinger,* 23 Ind. App. 695,

55 N. E. 1033, there seems to be no authoritative adjudication in Indiana upon the question of whether or not a plaintiff may summon himself as garnishee in an action instituted against the defendant. The authorities upon the subject are collected in a note in 31 A. L. R. 711.

The Indiana statute (§ 966, 1 Burns' Ann. Stats. 1914) makes the following provision relating to the affidavit and summons for garnishee:

"In all personal actions arising upon contract, express or implied, or upon a judgment or decree of any court, if at the time such action is commenced or at any time afterwards, whether a writ of attachment has been issued or not, the plaintiff, or any person in his behalf, shall file with the clerk an affidavit that he has good reason to believe, and does believe, that any person, naming him, has property of the defendant of any description in his possession or under his control; or that such person is indebted to the defendant or has the control or agency of any property, moneys, credits or effects; or that the defendant has any share or interest in the stock of any association or corporation, and shall file therewith a written undertaking, payable to the defendant therein, with freehold surety, to be approved by said clerk conditioned that he will prosecute his proceedings in garnishment to effect and will pay to the defendant all damages he may sustain if such proceedings shall be wrongful and oppressive."

While the language of the statute is "any person" and therefore broad enough to include a plaintiff, from other provisions of the statute of Indiana relating to the liability of the garnishee, statement to be made by the garnishee, and the right of the attaching creditors to examine the garnishee defendant, it seems quite clear that it was not the purpose and intent of the legislature of Indiana to authorize a plaintiff in an action to summon himself into court as garnishee, and we so hold.

There appears to us to be another answer to the contention made by the defendant: On the 30th day of December, 1924, the F. & R. Coal Company executed and delivered to

the *Finance & Realty Company,* a Pennsylvania corporation, an assignment of "all their right, title, and interest in and to the cause of action against the *Ogle Coal Company,* upon which suit has been commenced in the circuit court of Sheboygan county, Wisconsin," etc.

On the 16th of July, 1925, upon an affidavit setting forth the assignment and alleging that the *Finance & Realty Company* had an interest in the action, motion was made to make the *Finance & Realty Company* a party to this action. This motion was opposed by the defendant, but the motion was granted and the *Finance & Realty Company* was made and still remains a party to this action. It is to be noted that the *Finance & Realty Company* was not made a party to the proceeding in Indiana. The judgment in this action, although rendered after judgment was rendered by default in the Indiana garnishment proceeding, is that the plaintiffs recover from the defendant herein. It thus appears that the plaintiffs are joint owners of the judgment rendered in this action. What their respective interests are as between themselves does not appear. It is well established that a garnishee process against one of several joint debtors, the other debtors not being parties to the proceeding, does not reach the debt. *Badger L. Co. v. Stern,* 123 Wis. 618, 101 N. W. 1093; 28 Corp. Jur. p. 97, § 125, and cases cited.

The defendant was well aware of the fact that the *Finance & Realty Company* claimed to be the owner of an interest in the cause of action, yet in the disclosure made by it in the Indiana court it made no mention thereof, so that the process of the Indiana court was ineffectual to reach the fund sought. Therefore the judgment rendered in Marion county, Indiana, does not affect this action then pending in the state of Wisconsin.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on May 8, 1928.