CROCKER CHAIR COMPANY, Respondent, vs. EDWARD
HINES HARDWOOD & HEMLOCK COMPANY, Appellant.

*March 7—April 1, 1930.*

418

For the appellant there was a brief by *C. E. Lovett* of Park Falls, attorney, and *Bundy, Beach & Holland* of Eau Claire, of counsel, and oral argument by *T. M. Holland.*

*Wm. B. Collins* of Sheboygan and *Geo. B. Nelson* of Stevens Point, for the respondent.

OWEN, J.   The principal question presented upon this appeal is whether the failure of the plaintiff to pay for the shipments made on June 15th and June 30th according to the terms of the contract warranted the defendant, under all the circumstances, in declaring the contract terminated.  Sec. 121.45 (2), Stats., provides:

"Where there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

This statutory provision is generally known as sec. 45 of the Uniform Sales Act.  This provision has been frequently considered by this court, and it has been uniformly held that whether a failure to pay for one or more instalments of goods delivered under a contract calling for delivery in instalments constitutes such a material breach of the con-

tract as to justify its termination by the other party, gives rise to a question of fact to be determined in the light of the terms of the contract and all of the surrounding circumstances of the case. *Greer v. Oelhafen,* 180 Wis. 131, 192 N. W. 467; *Kieckhefer Box Co. v. John Strange P. Co.* 180 Wis. 367, 189 N. W. 145, 193 N. W. 487, 196 N. W. 572; *Goodman v. Brown L. & L. Co.* 183 Wis. 574, 197 N. W. 730; *Canadian Steel Foundries v. Thomas Furnace Co.* 186 Wis. 557, 203 N. W. 355; *Gerber v. Ogle Coal Co.* 195 Wis. 578, 218 N. W. 361.

The cases of *Ambler v. Sinaiko,* 168 Wis. 286, 170 N. W. 270, and *Chess & Wymond Co. v. La Crosse Box Co.* 173 Wis. 382, 181 N. W. 313, are not in conflict with this rule, because in each of those cases the refusal of the buyer to pay for the instalments was accompanied by conduct which, it was held, amounted to a repudiation of the contract on the part of the buyer.

In this case the jury found that the breach of contract on the plaintiff's part in not making said two payments within the sixty-day period was not so material as to justify the defendant in canceling the contract. This finding of the jury is abundantly supported by the evidence, and leaves little excuse for further discussion of the case. However, we will briefly summarize the circumstances which not only support this conclusion but plainly render a contrary conclusion harsh and unjust.

In the first place, as will appear from a consideration of the statement of facts, the defendant itself was grossly in default in the performance of the contract. While the contract called for a delivery of the full amount of the order within a year, nevertheless during that year less than ten per cent of the amount ordered had been delivered. Whether this default on the part of the defendant barred it from terminating the contract because of the breach of the plaintiff (*Goodman v. Brown L. & L. Co.* 183 Wis. 574, 197 N. W. 730; 3

Williston on Contracts, § 1468), it is certainly one of the circumstances which should be considered upon the question of whether the plaintiff's breach was of sufficient consequence to justify a termination of the contract. In the next place, the contract contemplated that the stock should be delivered as nearly as possible in equal monthly instalments. Because of the failure of the defendant to make deliveries as required by the plaintiff, the plaintiff was obliged to purchase raw material and to kiln-dry and to manufacture its own stock. It had considerable quantities of this stock on hand when the defendant in May, June, and July made heavy shipments of the stock, and "snowed plaintiff under," in the words of plaintiff's letter of September 22, 1926.

Furthermore, plaintiff had every reason to believe that under the circumstances the defendant would not insist upon the strict terms of the contract. The course of dealing between the parties during the fulfilment of the preliminary orders justified such belief. During the fulfilment of such orders the defendant accepted plaintiff's notes or trade acceptances due for considerable periods of time after the amounts came due according to the terms of the various orders. More than this, such additional time was voluntarily suggested by the defendant. On July 13, 1925, the defendant wrote plaintiff concerning delinquent payments, saying, "You have always shown disposition to settle all invoices promptly when due, and we can only assume that on account of our having shipped you less lumber than you expected, that possibly you felt we should not be technical on the terms and that you were entitled to a little extra time. We feel the same way about it and purposely have not written you regarding these invoices as we want to be fair in all of our dealing." Then followed a course of dealing between the parties extending the time of payment beyond the terms of the orders very much to suit the convenience of the plaintiff. After shipments were resumed in May, June,

and July of 1926 there was not a word of complaint on the part of the defendant because of the failure of the plaintiff to make payment in accordance with the exact terms of the contract. There was no intimation at any time that the defendant would require exact compliance in this respect.

More than this, at the interview in Chicago on March 6th the question of granting more liberal terms of payment to the plaintiff as it might be required was discussed, and the jury found that it was agreed at that conference that defendant would waive strict performance of the sixty-day net payment provided in the contract. While this finding of the jury is challenged by the defendant as being unsupported by the evidence, there is no doubt but that the matter was discussed at that time, and that, whether the result of that discussion amounted to an express agreement to waive compliance in this respect, the plaintiff had a right to believe that indulgences would be granted. At least the plaintiff had a right to believe that it would be warned if the defendant intended to enforce the strict terms of the contract with respect to payment. In this respect the situation is governed by *Wilbur v. Means,* 171 Wis. 401, 177 N. W. 575, where it was held that before one party could declare a breach because of a default in payment, where such default resulted from a course of conduct between the parties, it was necessary to give warning that such course of conduct would no longer be tolerated and that the terms of the contract would be enforced. To say that under all of these facts and circumstances the defendant was justified in terminating this contract would be shocking to the most crass sense of justice.

Many procedural errors assigned have received our careful consideration. They are not substantial and do not merit special treatment.

*By the Court.*—Judgment affirmed.