Argued February 16; affirmed March 22, 1938

# BENEDICT ET AL. *v.* HARRIS ET UX.

(77 P. (2d) 442)

Department 2.

*C. M. Hodges*, of Portland (Hodges & Gay, of Portland, on the brief), for appellants.

*Rolfe W. Skulason*, of Portland (Skulason & Skulason, of Portland, on the brief), for respondents.

This is an action to recover damages for breach of contract. The case was tried to the court without a jury and resulted in findings and judgment for the plaintiffs. Defendants appeal.

Under date of October 29, 1936, the defendants agreed in writing to sell to the plaintiffs a quantity of nursery stock, consisting of shrubs of various kinds, for the total price of $1,873.25. The number, size, and price of each variety are specified in the agreement. The stock was to be delivered at the defendants' farm near Tualatin, Oregon, in the fall of 1936 and the winter and spring of 1937. The plaintiffs paid $25 on the purchase price at the time the agreement was executed and promised to pay the balance "in cash at contract prices as stock is dug  *  *  *  and before same is hauled away from field". They promised also to remove all the stock by March 1, 1937. While not expressly so provided in the contract, the parties are in accord that the plaintiffs were to dig the stock.

There is evidence that early in the month of November, 1936, the plaintiffs several times dug and removed small quantities of stock. On three of these occasions, the stock so taken was not paid for at the time, but was paid for a day or two later when the plaintiff, Lee Benedict, came to the farm for another delivery. On November 7, Benedict paid the defendant, Sidney P. Harris, $23.75 for 12 Golden Irish yews, removed on that day and some other stock removed the day before. After that the plaintiffs received no more stock. The contract price for all the stock which they removed

was $38.10, and this was fully paid on November 7. A few days later Harris told Benedict the contract was broken and declared that he would not permit removal of any more of the nursery stock.

There were no further communications between the parties until early in 1937, when Benedict called at the Harris' house and the following conversation took place:

"I told him I didn't want any trouble with him; I would prefer to settle it otherwise, and all we wanted was our shrubs and we would pay him the contract price as we got them. 'Well', he says, 'you can't have them on that contract. If you want to tear the contract up and throw it in the stove right here, why, we will go ahead and do business, and I will let you have it at the contract price'. But I told him I didn't care to tear my contract up and that we would expect them to be delivered on that contract. So,—well, he says 'That contract is no good whatsoever, and if you think it is, why, you know where the courts are and you can go ahead and get it if you can'. So that was the gist of our conversation. So we told him, well, we would have to see what we could do."

Thereupon, Benedict consulted counsel and this action was filed January 18, 1937.

LUSK, J. The principal contention of the defendants on this appeal is that the plaintiffs have failed to prove one of the essential elements of their cause of action, namely, performance on their part. They say that the plaintiffs admitted in their testimony that they did not, in every instance, fulfill their promise under the contract to pay for stock before removing it, and that while the defendants may have waived this provision of the contract, the complaint does not plead waiver, but rather performance, and since performance

has not been shown, the findings are not supported by the evidence.

■ There can be no doubt that the general rule of law is as stated by the defendants, that when, by stipulation of the parties, the delivery of personal property and the payment of the purchase money as a consideration therefor are to occur at the same time, these simultaneous acts are regarded as mutual and concurrent, requiring a party before he can maintain an action for an alleged breach of contract to allege and show a performance or an offer to perform on his part of the agreement, and that the other party has failed in this respect: *Lewis v. Craft,* 39 Or. 305, 310 (64 P. 809).

■ But the contract involved in this case is one for the delivery of goods by instalments and the rights of the parties in respect to the immediate question are governed by § 64-505, Oregon Code 1930 (§ 45 Uniform Sales Act), paragraph two of which reads as follows:

"Where there is a contract to sell goods to be delivered by stated instalments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more instalments, or the buyer neglects or refuses to take delivery of or pay for one or more instalments, it depends in each case on the terms of the contract and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

In interpreting this statute, the supreme court of Pennsylvania, in *Monroe v. Diamond,* 279 Pa. 310 (123 Atl. 817), said:

"[Its] meaning simply is that in each particular case it must be determined whether or not the 'breach of

contract is so material' as to 'justify the injured party in refusing to proceed further \* \* \* (with) the entire contract,' or is so immaterial that the 'breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken.' The reason and spirit of the law make this clear. Obviously the question as to whether or not defendant was materially injured by plaintiff's breach, 'depends \* \* \* (not only) on the terms of the contract, \* \* \* (but also on) the circumstances of the case,' and this must be so in every broken contract of sale. Hence, the law, which seeks to remedy the wrong actually done, now wisely conditions the relief on the materiality of the breach, as thus determined, and not merely on the form of the contract.''

In *Helgar Corporation v. Warner's Features,* 222 N. Y. 449 (119 N. E. 113), the contract was for the sale of films for moving pictures, deliveries to be made over a period of several months, payment to be made for each film within 30 days after exhibition to the public. A payment of $10,000 was not made on the day it was due and the plaintiff (the vendor) two days later brought action, alleging its election to terminate the contract by reason of the breach and demanding judgment for the price of the films delivered, and also for the profits that would have been gained through the completion of the contract. It was held that the plaintiff's cause of action was limited to the recovery of payments in default. The plaintiff was not at liberty to treat the entire contract as broken. The decision was based on § 45 of the Uniform Sales Act, concerning which the court said, in an opinion by Mr. Justice Cardozo:

''Default in respect of one instalment, though falling short of repudiation may, under some conditions be so material that there should be an end to the obligation to keep the contract alive. Under other conditions,

the default may be nothing but a technical omission to observe the letter of a promise. General statements abound that, at law, time is always of the essence. For some purposes this is still true. The vendor who fails to receive payment of an instalment the very day that it is due, may sue at once for the price. But it does not follow that he may be equally precipitate in his election to declare the contract at an end. That depends upon the question whether the default is so substantial and important as in truth and in fairness to defeat the essential purpose of the parties. Whatever the rule may once have been, this is the test that is now prescribed by statute. The failure to make punctual payment may be material or trivial according to the circumstances. We must know the cause of the default, the length of the delay, the needs of the vendor, and the expectations of the vendee. If the default is the result of accident or misfortune, if there is a reasonable assurance that it will be promptly repaired, and if immediate payment is not necessary to enable the vendor to proceed with performance, there may be one conclusion. If the breach is willful, if there is no just ground to look for prompt reparation, if the delay has been substantial, or if the needs of the vendor are urgent so that continued performance is imperilled, in these and in other circumstances, there may be another conclusion. Sometimes the conclusion will follow from all the circumstances as an inference of law to be drawn by the judge; sometimes, as an inference of fact to be drawn by the jury.''

In *Crocker Chair Company v. Edward Hines Hardwood and Hemlock Company,* 201 Wis. 415 (230 N. W. 61, 75 A. L. R. 603), the facts in some particulars resemble those of the instant case. Plaintiff contracted to buy lumber to be delivered in instalments. Two invoices fell due and were not promptly paid. The defendant wrote plaintiff cancelling the contract. Before this letter was received by the plaintiff, it remitted the amount of one of the past due invoices. Defendant acknowledged

its receipt and wrote to plaintiff: "Your payment is retained because you owe the money, but you did not pay in accordance with the contract, and we do not waive the breach." Plaintiff sued to recover its damages resulting from the refusal of the defendant to fulfill the contract. There was a verdict and judgment for the plaintiff, which was affirmed on appeal. The question, under § 45 of the Uniform Sales Act, whether failure to pay an instalment constitutes such a material breach of the contract as to justify its termination by the other party, was said to be one of fact, "to be determined in the light of the terms of the contract and all of the surrounding circumstances of the case". Among the circumstances alluded to by the court which justified the judgment was that "the plaintiff had the right to believe that it would be warned if the defendant intended to enforce the strict terms of the contract with respect to payment."

In *American Tube and Stamping Company v. Erie Iron and Steel Company*, 281 Pa. St. 10 (125 Atl. 304), the court held that refusal of the purchaser to pay for two shipments of cast scrap was, under the circumstances, a material breach of the contract, as a matter of law justifying its termination by the vendor, but the refusal in that case was accompanied by circumstances which amounted to virtual repudiation. "Materiality", it was said, "may become a question of law for the court or of fact for the jury, as the facts of each case determine."

Generally the question is one of fact: Mariash on Sales, 568, § 274; *Gedanke v. Wisconsin Evaporated Milk Company*, 215 Wis. 370 (254 N. W. 660); *E. I. Dupont de Nemours Powder Company v. United Z. and C. Company*, 85 N. J. L. 416 (89 Atl. 992); although, as the Pennsylvania court held in the case just referred to,

the circumstances may be such that only one conclusion can be drawn and the question then becomes one for the determination of the court. See authorities cited in 1 Uniform Laws Annotated, 258; also annotation, 14 A. L. R. 1210.

In this case the circuit court found that the plaintiffs had fully performed and that the defendants wrongfully terminated the contract. There was substantial evidence to support these findings, and consequently it is unnecessary to determine whether the question of materiality of the plaintiffs' default is one of law or of fact. The evidence is at least sufficient to warrant a finding of fact that the plaintiff's defaults were not material. And, of course, if there is evidence to support the findings, they cannot be disturbed on appeal.

At the time that the defendants repudiated the contract, the plaintiffs had paid to them the sum of $38.10, which was the stipulated contract price for all the stock which theretofore had been removed. Some stock was removed on November 1 and for it the full contract price of $9.25 was paid at the time. Some more was removed on November 4, and the full contract price of $5.10 paid at the time. With Harris' permission four yews were taken by Benedict and two by Parfitt, plaintiffs' employee, and paid for a day or two later. Finally on November 7, Benedict paid $23.75 for stock, most of which had been removed the day before, and a part on that day. At no time prior to Harris' declaration, sometime after November 7, that the contract was at an end did he complain to Benedict about these slight delays in payment. When he accepted the payment, delinquent one day, on November 7, he made no such complaint. Applying the criteria of Mr. Justice Cardozo in *Helgar Corporation v. Warner's Features,*

supra, the circuit court could have found that the defaults were not willful; that payments were not in every instance made strictly at the appointed time because the plaintiff, Lee Benedict, had no money on his person and the defendants agreed to slight delays; that there was not only reasonable assurance that the defaults would be promptly repaired, but that actually they were repaired; that immediate payment was not necessary to enable the vendors to proceed with the contract, since they had nothing further to do under the contract; that the delays were not substantial, but trivial in character. In brief, the evidence is sufficient to justify the conclusion that the defaults were not material and not regarded by either party as such, but amounted only to "a technical omission to observe the letter of a promise"; and being so, that the plaintiffs did in fact substantially perform their part of the contract and the defendants wrongfully refused further performance.

■ Consequently there was no failure of proof. It is not a question of waiver by the defendants. It is a question of performance by the plaintiffs. If they were guilty of no material default then their performance was of such a quality as to create in them the right to maintain an action against those who, without just cause, chose to terminate the contract.

■ The remaining contentions of the defendants require no extended discussion. They urge that the evidence does not support the finding that the plaintiffs were ready, able, and willing to perform, because it is shown that there were a number of unsatisfied judgments against them, and they wanted financial resources. But there was also evidence that the plaintiffs' business—landscaping, sale of nursery stock, orchard grafting, and the like—yielded them an income of about $5,000 for the winter; that there was an active

market for the nursery stock with advancing prices, and that the prices at which plaintiffs contracted to purchase from defendants were low, giving them a long margin on resales. The question of plaintiffs' ability to pay for the stock as it was delivered to them was one of fact for the trial court, and the evidence, to which we have called attention, was sufficient to sustain the finding: *Schucking & Co. v. Young,* 78 Or. 483, 493 (153 P. 803).

■■ Next, it is insisted that plaintiffs should have tendered the price and demanded the goods. This contention is ruled against the defendants by *Schucking & Co. v. Young,* supra, in which Mr. Justice McBRIDE said that it is "the settled law of this state that a declaration by one party to a contract made prior to the time fixed for the performance that he will not comply with such contract, if not withdrawn, may dispense with or excuse an offer to perform by the other party before bringing the action, although it does not ordinarily excuse ability to perform: *Longfellow v. Huffman,* 49 Or. 486 (90 P. 907) ; *Krebs Hop Co. v. Livesly,* 55 Or. 227 (104 P. 2)." And see *Lake Shore and M. S. R. Company v. Richards,* 152 Ill. 59 (38 N. E. 773, 30 L. R. A. 33).

■ The defendants further say that there is no evidence of repudiation by the defendant, Sally P. Harris, who signed the contract jointly with her husband, and therefore, that in no event is she liable in this action. The record shows that Mrs. Harris was present during the conversation between Lee Benedict and her husband in January, 1937, when Harris, according to Benedict's testimony, told the latter to destroy the contract. From this it is permissible to infer that she joined in her husband's act and approved his previous renunciation of the contract in November, 1936.

■ Finally, the defendants complain about the amount of the judgment. The circuit court found that the market value of the undelivered nursery stock at the time of the breach was $3,400, and that the plaintiffs were damaged in the sum of $1,526.75, the difference between the contract price and the market value. It is asserted in the defendants' brief that the only competent evidence as to market value, on the day of the breach, was given by a witness for the defendants who testified that the prices mentioned in the contract were the fair market prices at that time. The record discloses that Mr. Lee Benedict, who has had many years' experience in the nursery business, and was a competent witness on the market value of nursery stock, gave testimony which would have justified a much larger judgment than the one actually entered. The defendants also tell us that the opinion of the circuit judge shows that he based his finding of damages on testimony of Mr. Harris that he realized at least $3,400 from the sale of the stock; that Harris did not sell the stock until March 20, 1937, which was after the contract had expired by its terms, and, therefore, that the court's finding was based on a false premise. We do not know what the circuit judge said in his opinion because the opinion is not before us, but what he said and what may have been the reasons for his conclusion are wholly immaterial in view of the fact that his conclusion finds support in the evidence.

After careful consideration of the record and the contentions of the defendants, we are of the opinion that no error was committed by the circuit court, and that the evidence was sufficient to justify the findings of fact. The judgment is, therefore, affirmed.

BEAN, C. J., and RAND and BAILEY, JJ., concur.